## SYKES *v.* CHADWICK.

A woman's right of dower being a valuable right which she cannot be compelled to resign, and which the law protects very carefully from her husband's control, her release of it is a good consideration for a promise to pay money to her separate use. Accordingly, where a husband and another, owning a piece of land in the District of Columbia, which they wanted to sell, applied to the wife (all parties being residents of the District) to release her dower, which she did in consideration of the husband and the other executing to her directly a joint promissory note for a sum of money; *Held:*

1st. That in virtue of the act of 10th April, 1869 (14 Stat. at Large, 45), regulating the rights of property of married women in the District of Columbia, by which it is enacted, "that the right of a married woman to any property belonging to her at the time of marriage, or acquired during marriage, in any other way than by gift or conveyance from her husband, shall be as absolute as if she were a feme sole, and not subject to the disposal of her husband or liable for his debts; and that she may convey or bequeath the same as if she were unmarried; also, that any married woman may contract and sue and be sued in her own name in all matters having relation to her sole and separate property in the same manner as if she were unmarried:" And in virtue of the further act, to amend the law of the District of Columbia in rela-

tion to judicial proceedings therein, of February 22d, 1867 (14 Id. 405), by the twentieth section of which it is enacted "that where money is payable by two or more persons jointly or severally, one action may be sustained and judgment recovered against all or any of said parties by whom the money is payable, at the option of the plaintiff," she could sue the joint obligor of her husband at law.

2d. That though by the laws of the District as construed, the wife might, in fact, under the special circumstances of the case, really have had no right of dower, still if her release was deemed requisite to secure the sale of the property, such release was a good consideration for the promise to pay her money.

ERROR to the Supreme Court of the District of Columbia, the case being thus:

James Sykes and H. A. Chadwick (the latter a married man, his wife being Eleanor Chadwick), owning a piece of real estate in the city of Washington, and wishing to borrow money on it, conveyed it by deed of trust—that is to say, mortgaged it—to Hyde to secure a sum which he lent them; Mrs. Chadwick joining in the mortgage, and her acknowledgment of the same being taken separately and apart from her husband, in the way prescribed by the laws of the District in order to pass the estate of a *feme covert.*

Desiring afterwards to sell the same property (the mortgage being still unpaid), Sykes and Chadwick requested Mrs. Chadwick to join them in a deed to the purchaser for the purpose of releasing her right of dower.

She did so; and, in consideration therefor, they gave her a note in this form:

$5000.]                          WASHINGTON, October 15th, 1869.

Six months after date, we promise to pay to the order Eleanor Chadwick five thousand dollars, value received.

JAMES SYKES,
H. A. CHADWICK.

At the time when this note was thus given, there prevailed in the District an act of Congress, passed April 10th, 1869,* in these words:

---

* 16 Stat. at Large, 45.

*An Act regulating the Rights of Property of Married Women in the District of Columbia.*

Sec. 1. The right of any married woman to any property, personal or real, belonging to her at the time of her marriage, or acquired during marriage in any other way than by gift or conveyance from her husband, shall be as absolute as if she were *feme sole,* and shall not be subject to the disposal of her husband, nor liable for his debts; but such married woman may convey, devise, and bequeath the same, or any interest therein, in the same manner and with like effect as if she were unmarried.

, Sec. 2. Any married woman may contract and sue and be sued, in her own name, in all matters having relation to her sole and separate property, in the same manner as if she were unmarried; but neither her husband, nor his property, shall be bound by any such contract, nor liable for any recovery against her in any such suit; but judgment may be enforced by execution against her sole and separate property, as if she were sole.

Also another act, of February 22d, 1867,* in these words:

*An Act to amend the law of the District of Columbia in relation to Judicial Proceedings therein.*

Sec. 20. Where money is payable by two or more persons jointly or severally, as by joint obligors, covenantors, makers, drawers, or indorsers, one action may be sustained and judgment recovered against all *or any of said parties, by whom the money is payable, at the option of the plaintiff.*

In this state of facts and of statutes, the note to Mrs. Chadwick not being paid, she brought suit upon it against Sykes alone, at law, in the court below, a court having jurisdiction both in equity and at common law.

The court below sustained the suit; and from its judgment in the matter this writ of error was taken.

*Messrs. W. F. Mattingly and R. T. Merrick, for the plaintiff in error:*

1st. *There was no consideration for the note.* The deed of

---

* 14 Stat. at Large, 405.

trust to Hyde, executed previously to the deed of sale (or mortgage), in connection with which the note was given, passed Mrs. Chadwick's right of dower, and in the District, where the ancient rule of the English law, inherited by the District from the colonial law of Maryland, prevails, a widow has no dower in an equity of redemption.* It will not do to allege that her mere execution of the deed was a sufficient consideration for the note.

2d. Even if she had a right of dower in the real estate, it was not her sole and separate property within the meaning of the law. The right of dower is not an estate in lands.† If the contrary view is held to be law, then every married woman, whose husband happens to own real estate, has a sole and separate property, with reference to which she may contract.

3d. The note was a joint note, and being void as to her husband, one of the makers, the plaintiff was not entitled to recover.‡

4th. This case, in no view of it, comes within the letter or spirit of the acts of Congress. Mrs. Chadwick has no separate property, and therefore could not make any contract as to it. The note itself could not be her separate estate, under the law, for the note is merely the evidence of the contract, which she was incapable of making. Moreover, it is void, as already said.

*Messrs. A. G. Riddle, C. M. Hawley, and F. Miller, contra.*

Mr. Justice BRADLEY delivered the opinion of the court.

The question is whether the note on which this suit is brought against Sykes is valid, as against the defendant, so as to sustain the present action. In aid of the plaintiff's case certain acts of Congress relating to the District of Columbia have been referred to. First, an act regulating the

---

* Stelle *v.* Carroll, 12 Peters, 201.

† Jackson *v.* Vanderheyden, 17 Johnson, 167.

‡ Edwards *v.* Stevens et al , 3 Allen, 315.

rights of property of married women in the District of Columbia, passed April 10th, 1869, by which it is enacted, in substance, that the right of a married woman to any property belonging to her at the time of marriage, or acquired during marriage, in any other way than by gift or conveyance from her husband, shall be as absolute as if she were a feme sole, and not subject to the disposal of her husband or liable for his debts; and she may convey or bequeath the same as if she were unmarried. Also, that any married woman may contract and sue and be sued in her own name in all matters having relation to her sole and separate property in the same manner as if she were unmarried. Secondly, an act to amend the law of the District of Columbia, in relation to judicial proceedings therein, passed February 22d, 1867, by the twentieth section of which it is enacted that where money is payable by two or more persons jointly or severally, as by joint obligors, covenantors, makers, drawers, or indorsers, one action may be sustained and judgment recovered against all or any of said parties by whom the money is payable, at the option of the plaintiff.

With regard to the first-mentioned statute, relating to a married woman's property possessed at the time of marriage or acquired afterwards, we think it clear that it does not refer to her contingent interest in her husband's estate, but to property owned by or coming to her independent of her husband—property which, but for the statute, he would acquire an interest in by right of marriage. The sole object of the statute was to prevent his acquiring such interest in her property. Her right of dower in his property stands as it did before the statute. She cannot dispose of it independently of her husband; nor can she, without his consent, separate it from his estate in the land.

Still her right of dower is a valuable interest, which she cannot be compelled to resign, and which the law very carefully protects from the control of her husband. When she does part with it an officer must examine her apart from her husband, to ascertain whether she does it freely and voluntarily. And whilst this interest is a valuable right of the

wife, it is a corresponding incumbrance upon the land to which it attaches. By the aid of modern science it is capable of a definite valuation. Hence it is easy to ascertain whether an undue valuation is placed upon it. In this case no suggestion of that kind is made. For all that appears the transaction was made in good faith. At all events the parties to it cannot allege the contrary.

The wife's interest being valuable, and one that may be disposed of by her with her husband's concurrence, the question arises whether her release of her right of dower is a good consideration for a separate provision for her benefit, or of a promise to pay money to her separate use. And of this we have no doubt. The question would hardly have been raised had the arrangement been made with the purchaser instead of the vendors of the land, one of whom was the plaintiff's husband. But arrangements of this kind made with the husband are sustained in equity by very high authority. In *Garlick* v. *Strong*,\* where a husband who was about to sell his estate agreed with his wife that if she would release her dower she should share a portion of the purchase-money to her separate use, it was held by Chancellor Walworth that the agreement was valid, and that a note given by the purchaser to a trustee for the wife for the amount allowed to her in the arrangement became her separate property, and though the money due on the note was paid and invested by the trustee in a bond in the wife's name, which bond was afterwards disposed of by the husband without her consent, the fund was followed into the hands of the party receiving it with notice, and decreed to belong to the wife. The chancellor said: "It is well settled that a post-nuptial agreement between the husband and wife, by which property is set apart to her separate use, will be sustained in equity though void at law. The relinquishment of the dower in this case was a sufficient consideration to support this agreement on the part of the husband. Although as against creditors, whose debts existed at the time, post-

---

\* 3 Paige, 440.

nuptial agreements will not be permitted to stand beyond the value of the consideration, that principle cannot be applied to this case, which appears to be an attempt on the part of these defendants to defraud the wife of the moneys to which she is equitably entitled under this agreement." These views of the chancellor seem to us to be founded in justice and good sense. The same principle was decided in Virginia in the case of *Harvey* v. *Alexander*,* and in *Quarles* v. *Lacy*.† In each of these cases property was conveyed to the separate use of the wife, by the procurement of her husband, in consideration of releases of dower made by her in his lands. It was held in the latter case that such a transaction was good as against creditors to the extent of the value of the dower released. Indeed, as far back as the time of Chief Justice Hale, it was held that if a wife join in a fine so as to relinquish her dower, it will be a good consideration for a settlement.‡

We may therefore regard the transaction under consideration as valid and binding in equity both on the defendant and the husband of the plaintiff. The note given to the plaintiff was the fruit of this transaction. The transaction itself was a good and sufficient consideration for the note. The latter is her separate property, as much so as an equal amount of money would have been, if it had been placed by the vendors to her credit in bank. She having performed her part of the agreement, there became due to her so much money for her separate use, and as her separate property. The note is no part of the contract by which her dower was released. It is a mere security given to her for the money growing due to her out of that contract. Her husband and his copartner became indebted to her, and gave her this note as her separate property. Such a note must be just as valid as if she had lent them the amount out of her separate estate, and taken their note as security for the payment of

---

* 1 Randolph, 219.                    † 4 Munford, 251.

‡ Lavender *v.* Blackstone, 2 Levinz, 147; Atherley, 161; and see 2 Kent, 166; 2 Scribner on Dower, p. 6, § 6; Bank of the United States *v.* Lee, 13 Peters, 110; Niemcewitz *v.* Gahn, 3 Paige, 614.

it. The transaction is virtually the same as if they had paid her the money, and she had lent it to them on the note in question.

The case may be shortly stated thus:

By the act of 1869 the plaintiff, as a married woman, acquired the capacity at law to receive property to her separate use, and subject to her separate and exclusive control as if she were unmarried, provided it does not come to her by gift or conveyance from her husband—by which is undoubtedly meant voluntary gift or conveyance. Having this capacity, she did receive and acquire, for a good and valid consideration moving from herself, the promissory note in question.

This note, then, being her separate property, not acquired by gift or conveyance from her husband in the sense in which the statute uses those terms, she is entitled to the benefit of the statute in reference to the exclusive possession and enjoyment of the note, and to the exclusive right of suing upon it. As to it, she is relieved from the incapacity which the common law imposed upon her, and is as if she were unmarried. The technical reasons, therefore, which, at the common law, rendered void a note or other obligation made by the husband to the wife, no longer exist in this case. And if there are still any such reasons which would compel the plaintiff in enforcing the note as against her husband to seek the aid of a court of equity, there are none to prevent her from suing the defendant upon it in a court of law. The statute of 1867, above referred to, enables the holder of a joint obligation to sue either or any of the parties to it without suing the others. The defendant, therefore, has no legal ground of defence to the action. The note is founded upon a good and valid consideration. Whether a right to sue the other maker of it exists or not is of no consequence to the defendant. As to him, there can be no doubt that the plaintiff is invested with all the capacities and rights which are necessary to enable her to maintain an action at law on the note.

It is contended, however, that prior to the sale of the

property and the giving of the note the plaintiff had joined the defendant and her husband in a deed of trust for the same property, given to secure the payment of a loan made by them, and that by this outstanding deed of trust her right of dower was extinguished.

If it be true, as contended for by counsel, and as the cases seem to show, that in this District the antiquated rules on this subject still prevail—so as to bar a widow of all dower in an equity of redemption—if, instead of being a mere security for money, a mortgage or deed of trust in nature of a mortgage, transfers the legal estate so as to deprive the mortgagor of the ownership of his property, yet the plaintiff would have been reinvested with her right to demand dower in the land whenever the purposes of the trust should be accomplished, and no purchaser would deem it safe to take a conveyance of the equity of redemption from the mortgagors without a release of her contingent right. And whatever technical obstacles the trust-deed may have raised against her right to recover dower at law, in case of the death of her husband, no one desiring to purchase the property would be willing to incur the hazard of those obstacles being removed. At all events, the defendant when he was endeavoring to negotiate the sale of his property deemed it of sufficient importance to give the note in question in consideration of the plaintiff joining in the deed, and releasing any contingent right she might have. This very act of hers may have been necessary, and we have a right to infer that it was deemed important, to the closing up of the transaction and securing the sale of the property. If any release is deemed requisite to confirm the title of lands with which one has been connected, though by a proper construction of the law he has no interest in them whatever, still such release will be a good consideration for a promise or for the payment of money.

JUDGMENT AFFIRMED.

Mr. Justice MILLER, dissenting:

This is a common-law action brought on a promissory

note on the law side of a court which possesses and exercises in separate forums both common law and equity jurisdiction.

The District of Columbia, for which that court sits, and whose laws it administers, has preserved the principles of the common law less affected by statutes than any part of America, and, perhaps, less than England herself.

That a married woman could make no express contract, except as she joined her husband with her, by that law is, I think, too clear for argument. It is, therefore, a waste of learning to inquire under what circumstances she could contract with her husband. The plaintiff in this case could make no lawful contract with Sykes unless under very special circumstances.

The act of Congress relied on, and which is deemed necessary to the validity of the note, so far removed this general disability as to enable her to make contracts in respect to her separate property, and I agree to the definition of the court as to what is separate property within the meaning of that act. Her dower interest in her husband's land is not separate property. This is conceded.

On the other hand, it is undoubtedly true that a release of dower is a good consideration for a promise, whether in writing or otherwise, and the promise would be valid if made to a person capable of contracting. But this leaves untouched the question of plaintiff's capacity to make the contract.

The release of dower and the agreement to pay a certain sum for it was one contract. The execution of the deed of release and of the notes were each the consideration for the other. I cannot see the force of the dialectics by which, after the contract is made, the note given as evidence of one part of it is called the separate property of the wife, concerning which the contract was made. That is to say, this contract was made in reference to the paper, and it constitutes the material part of the note, and, this being her separate property, enables her to make the contract by which Sykes became her debtor.

But suppose no note had been taken, the promise would

have been just as good as it is with it.   Where would then have been her separate property, about which she was authorized to contract?

It is clear to me that, to enable a married woman to contract, she must have and own separate property at the time of making the contract, and that to make that contract valid it must relate to that property.   If the proposition on which this case is rested be sound, the wife need have no separate property to enable her to contract; but she can make any agreement by which she is to receive something, put it in writing, call the paper which evidences the agreement her separate property, and the thing is done.

As to the invasions which courts of equity have made on the rigid and unjust rules of the common law on this subject, they are wise and beneficent, and they were made *because* the common law courts afford no remedy, and if this were a suit in equity by Mrs. Chadwick to recover the value of her dower after she had legally conveyed it, I would gladly enforce her right.   But that is not the case, and I do not think the courts have an unlimited right to overturn the clearest principles of the common law because legislation has lagged behind the progress of the age in the jurisprudence which governs the rights of married women.

I regret to have to dissent, but I think the precedent of making laws in this manner too pernicious to be acquiesced in by my silence.